In re PENSION PLAN FOR EMPLOY-EES OF BROADWAY MAINTE-NANCE CORPORATION.

PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,

v.

BROADWAY MAINTENANCE CORPORATION, Defendant.

No. 81 Civ. 3958 (KTD).

United States District Court, S. D. New York.

Sept. 16, 1982.

---

Pension Benefit Guaranty Corp., Washington, D.C. (Henry Rose, James N. Dulcan, Washington, D.C., Lawrence F. Landgraff, Peter R. Robinson, of counsel), Regional Sol. of Labor, New York City (Francis V. LaRuffa, New York City, of counsel), for plaintiff.

Shea & Gould, New York City (Remy J. Ferrario, New York City, of counsel), for defendant.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

■ In 1974, Congress passed the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* to

provide an efficient and equitable mechanism for the termination of employee pension plans. Before the enactment of ERISA, pension plans were subject to neglect and abuse which resulted in injury to innocent employees. Unfortunately, neglect and abuse of the innocent employee has continued to plague the termination of pension plans despite the statutory protections of ERISA. The Pension Benefit Guaranty Corporation ("the corporation"), which was established under ERISA and is responsible for the distribution of guaranteed pension benefits, locks horns in this case with the bankrupt Broadway Maintenance Corporation ("Broadway") in a dispute in which the parties ignore the pension plan participants' interests and the potential financial detriment they face, and instead focus on each corporation's attempts to limit its own liability. It is the statutory language of ERISA and not the parties that continually reminds me of the primary purpose of ERISA and the corporation: to protect the accrued interests of pension plan employees.

The corporation initiated this lawsuit in order to secure appointment as statutory trustee of Broadway's pension plan, obtain adjudication that the Broadway plan was in fact terminated and prevail on its selected termination date of March 26, 1981. In an endorsement filed September 7, 1982, plaintiff's uncontested requests were granted: the corporation was appointed statutory trustee and the Broadway pension plan was legally terminated. The sole issue remaining was the date of termination. The significance of this date is evidenced by the parties' adamant opposition to each others' proposed dates. If a later date is established, the financial burden shouldered by the corporation will be decreased and the liability of Broadway will increase. Conversely, if an earlier date is established, the liability of Broadway will decrease in direct correlation to the increase of the corporation's financial responsibility.

The selection of an appropriate cut-off date was the subject of a one day nonjury trial held before me on September 8, 1982. The following shall constitute my findings of fact and conclusions of law.

On October 1, 1973, Broadway created a pension plan for its non-union employees effective as of September 1, 1973.[1] Broadway subsequently contracted with the New York Life Insurance Company to fund this plan. Broadway experienced serious financial difficulties after the plan was effected. These difficulties resulted in the filing of a Chapter XI bankruptcy petition on July 19, 1978. At no time did Broadway notify the corporation, as was required pursuant to 29 U.S.C. § 1343, of the Chapter XI proceeding. The corporation first became aware of Broadway's financial problems in August, 1980 when it received inquiries from participants regarding the status of the plan. The case worker assigned to the case, Mr. Ronald Floyd, began his investigation of Broadway in September, 1980. Floyd's investigation revealed that the plan's assets were insufficient to discharge Broadway's liabilities. It was discovered that even though Denis Moussouris, Broadway's treasurer, believed the filing of a petition in bankruptcy terminated the plan, this erroneous belief was not transmitted to all the plan participants. The only step Mr. Moussouris' took to place the participants on notice was to send a memo to the Broadway Payroll Supervisor requesting that the termination of the pension plan be reflected in a small box on the W–2 tax forms of the participants. As a result of Floyd's review of the facts, the corporation filed on December 5, 1980, two Proofs of Claim in the pending Chapter XI proceeding.

Discussions between Broadway and the corporation continued from August, 1980 when the corporation first received an inquiry from a Broadway plan participant (Plaintiff's Exhibit 9) until March 16, 1981,

---

1. The number of the plan participants from the beginning of the plan until the present was not established at trial. Neither side has presented either the name of the participants whose rights are at issue here or the differences in benefits that will result from an early or late termination date. This demonstrates a disturbing disregard for the beneficiaries of this litigation.

when Broadway filed its Notice of Intent to Terminate, Plaintiff's Exhibit 18. The Notice of Intent proposed a retroactive termination date prior to December 31, 1979 as opposed to the customary termination date of ten days after the Notice of Intent is filed, in this case March 26, 1981. The parties inability to agree on a termination date resulted in the instant trial.

## DISCUSSION

ERISA provides in part that, "[b]efore the effective date of the termination of a single-employer plan, the plan administrator shall file a notice with the corporation that the plan is to be terminated on a proposed date (which may not be earlier than 10 days after the filing of the notice) . . . ." 29 U.S.C. § 1341(a) (1976 & Supp. IV 1980). The corporation argues that Broadway's filing of this notice on March 16, 1981, sets March 26, 1981 as the earliest possible termination date. Broadway, on the other hand, contends that the corporation had sufficient notice under 29 U.S.C. § 1341(a) before December 31, 1979 to permit a retroactive termination date. Broadway's argument ignores the corporation's change of policy, published in the Federal Register, only to allow *nunc pro tunc* termination dates in "highly unusual cases." Plaintiff's Exhibit 20. As this litigation evidences, the corporation does not consider this case deserving of an early termination date. Ronald Floyd testified, in fact, that no retroactive termination dates have been authorized since this change of policy was effected in early December, 1980.

■ After rejecting Broadway's proposed date the corporation moved, pursuant to 29 U.S.C. § 1342(c) (1976 & Supp. IV 1980), for judicial termination of the plan. The court is empowered to set a termination date when the parties fail to agree. 29 U.S.C. § 1348(a)(3) (1976 & Supp. IV 1980). The corporation's invocation of the involuntary termination provisions of ERISA allows judicial examination of all the conflicting interests without placing an obligation on the courts to accept either party's requested termination date. The relevant statute provides:

(c) If the corporation has issued a notice under this section to a plan administrator and (whether or not a trustee has been appointed under subsection (b) of this section) has determined that the plan should be terminated, it may, upon notice to the plan administrator, apply to the appropriate United States district court for a decree adjudicating that the plan must be terminated in order to protect the interests of the participants or to avoid any unreasonable deterioration of the financial condition of the plan or any unreasonable increase in the liability of the fund.

29 U.S.C. § 1342(c).

The corporation's insistence that March 26, 1981, the date arrived at pursuant to the voluntary termination statute, 29 U.S.C. § 1341(a), bind any decision under the involuntary termination statute, is not only contrary to the statutory language but also in direct derogation of the rights of the plan participants. When confronted with the corporation's request, I am obligated to explore and consider the interests of the participants, the corporation, and Broadway.

■ The case of *Pension Plan Guaranty Corp. v. Heppenstall Co.,* 633 F.2d 293 (3d Cir. 1980), stresses that the court is to be guided not only by the corporation's interests but also by the participants' reliance interests when establishing a termination date. *See also Pension Benefit Guaranty Corp. v. Dickens,* 535 F.Supp. 922 (W.D. Mich.1982). The *Heppenstall* court, when faced with a request by the corporation for a contested termination date, determined "that the earliest date which could properly be selected by the court is that date on which participant's employees had some reasonable notice that PBGC [the corporation] was seeking termination, and thus that they no longer had a justifiable expectation in the accrual of vested pension rights," 633 F.2d at 302.

■ A test can be formulated from the *Heppenstall* analysis and applied to the instant case. When presented with a petition for involuntary termination, the termina-

tion date shall be the *earlier* of (1) ten days past the date the employer submits its Notice of Intent to Terminate (in this case March 26, 1981),[2] (2) the date the corporation first recognizes the need for termination and is in a position to so notify the plan participants, or (3) the date the employer actually notifies all participants of the plan's termination.

From all the testimony adduced at trial, I conclude that December 5, 1980, the date the corporation's original Proofs of Claim were filed,[3] is the earliest date when all the participants could have been first notified of the corporation's intent to terminate the Broadway pension plan. The Statement in Support of Claim accompanying the Proofs of Claim states "PBGC [the corporation] will apply to the United States District Court for an order terminating the Plan . . . ." Defendant's Exhibits J and K at ¶ 5. The worsening financial condition of Broadway was insufficient to place the participants on notice of the impending plan termination. It was not until Ronald Floyd completed his investigation of Broadway in early December, 1980, and determined that the plan's assets were insufficient to meet its liabilities that the corporation took a position on the need for termination of the Broadway plan.[4] It was at this time that the corporation should have notified all participants of the anticipated termination to preclude increased exposure.

Broadway's argument that the filing of the Chapter XI petition provided reasonable notice to all plan participants is unpersuasive. The ERISA legislative history is replete with references to reorganization and financial difficulties but only in connection with multi-employer plans and not in connection with the single employer plan at issue here. *See* H.R.Rep.No.869, 96th Cong., 2d Sess. 2918, 2919, 2922, 2958–60 (1980). This history leads to the logical conclusion that if Congress intended for a Chapter XI petition to constitute automatic termination or to provide a basis for a termination date it would have so stated. Broadway also conceded at trial that the change on the plan participants' W–2s to reflect no pension coverage was not sufficient notice.

Accordingly, under the test set forth earlier, the earliest termination date is December 5, 1980, the date the corporation memorialized its intent to terminate the Broadway plan. The termination date of the Broadway pension plan is established, pursuant to 29 U.S.C. § 1342(c) as December 5, 1980.

---

**2.** The ten day period provided by the statute is obviously included to permit the corporation time to give appropriate notice to the employees covered by the pension plan.

**3.** The Proofs of Claim were later amended. Plaintiff's Exhibit 31.

**4.** Mr. Floyd testified that he had been involved with other company's bankruptcy proceedings and that a bankruptcy proceeding need not necessarily result in termination.